### F. LOMBARDO & SONS v. SCHMIDT & COMPAGNO.

### No. 14946.

Court of Appeal of Louisiana. Orleans.
Oct. 29, 1934.

S. Roccaforte and H. W. & H. M. Robinson, all of New Orleans, for appellant.

George Piazza, of New Orleans, for appellee.

JANVIER, Judge.

This is a suit for damages for an alleged breach of contract for failure to deliver certain merchandise.

Fillippi Lombardo operated a bakery under the name of F. Lombardo & Sons. Schmidt & Compagno, a partnership engaged in business as flour merchants, by written contract dated July 5, 1932, sold to Lombardo 500 barrels of a certain kind of flour known as Baker's Gold. The flour was to be delivered during the months of October, November, and December, 1932, upon order of Lombardo. It is alleged that only 300 barrels of the said flour have been delivered, and that defendant, though called upon to deliver the remaining 200 barrels, failed to do so, and that plaintiff was compelled to purchase 200 barrels in the open market at a much higher price. The loss alleged in the petition is $1,480.

Defendants maintain that they actually delivered to Lombardo 450 barrels of flour under the contract, and that they were ready and willing to deliver an additional 50 barrels, but that Lombardo, when called upon to accept delivery of the said 50 barrels, refused to do so.

The contract was executed on July 5, 1932. At the end of December, 1932, Lombardo had called for only 250 barrels which had been delivered to him.

For many years the parties had had business relations, and the custom had been established of permitting the contracts to remain unexecuted for a much longer term than was stipulated in them.

During January, 1933, on order of Lombardo, two additional shipments of 25 barrels each were delivered. These shipments did not consist of Baker's Gold, but of what is known as Meyer's Best; the evidence show-

ing that for some reason Lombardo was not pleased with the Baker's Gold and that the other brand was substituted. It is conceded that these 50 barrels were delivered and received as a part of the 500 barrels included in the contract involved in this suit.

On January 6, 1933, 50 barrels of flour bearing the brand, Seal of Minnesota, were delivered to Lombardo, and on March 28, 1934, an additional 100 barrels of Seal of Minnesota flour were delivered. Lombardo contends, however, that these deliveries consisting of 150 barrels of Seal of Minnesota flour were not delivered under the original contract, but were separate purchases.

On July 5th the price of flour had risen substantially, and Lombardo, taking the position that he was still entitled to 200 barrels of flour under the original contract, called upon defendants for delivery. They advised him that they had already delivered 450 barrels, and that they stood ready to deliver the remaining 50 barrels if he would accept them not later than the following day, but, that, since the original terms of the contract had long expired, should he fail to accept the 50 barrels, they would consider the contract terminated.

The sole question is one of fact; that is to say, whether the 150 barrels of Seal of Minnesota flour were received by Lombardo as deliveries under the original conrtact or were separate purchases made by him.

In the lower court there was judgment for defendant dismissing plaintiff's suit.

█ The evidence shows that, after the first delivery of one carload consisting of 250 barrels of Baker's Gold flour, Lombardo complained that the flour was not producing the results that he desired, and that thereafter other brands of flour were sent to him. Since the other brands of flour were slightly more expensive, Lombardo was charged the differential over the original contract price which was arrived at in the following manner. The original contract price was $2.90 per barrel. On the day of each substitution, the market price of Baker's Gold flour was deducted from the market price of the substituted flour, and the difference was added to the contract price of $2.90, and Lombardo was charged the price thus arrived at. For instance, on the day of one of the substitutions, Baker's Gold flour was selling at $3.05, and the substituted flour, Seal of Minnesota, was selling at $3.50

per barrel, the difference being $.45 per barrel. Since under the contract Schmidt & Compagno had agreed to sell Baker's Gold at $2.90 per barrel, to this base price the $.45 difference was added, so that the total price at which the Seal of Minnesota flour was delivered was $3.35 per barrel.

The testimony on behalf of defendants is very clear and unambiguous, and shows a determined effort on their part to satisfy Lombardo and to deliver to him flour which would prove satisfactory, and convinces us beyond a doubt that the finding of the lower court that the substituted brands were intended by both parties to be deliveries under the original contract was correct.

Mr. Lombardo's testimony is most evasive, and on various occasions he became very much confused and sought refuge in the declaration that he spoke and understood English very poorly.

Although the parties had established the custom of permitting contracts to remain open and unexecuted long after the expiration of the time fixed in the contract, each of the parties could, upon reasonable notice, place the other in default at any time, and therefore when, on July 5th, Lombardo was called upon to accept delivery of the 50 barrels which defendants correctly contended was all that remained undelivered under the contract, his failure to do so afforded defendants an opportunity to cancel so far as the contract remained unexecuted.

Although the burden of proving the substitutions was originally upon the defendants, our brother below felt that the record contained sufficient evidence to discharge this burden and we agree with him.

The contention that Lombardo did not understand the explanation as to price adjustments falls when we examine his testimony as to prices and when we realize that he had been successfully engaged in the bakery business for a great many years and during those years was constantly purchasing flour in large quantities.

As we have said, only questions of fact are involved, and the record contains nothing which authorizes a reversal of the finding of the district court.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.